08-22304.rr2

### UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 08-22304-CIV-MARTINEZ-BROWN

CHESTER A. PEARSON,

    Plaintiff,

vs.

JAMES B. PEAKE,
Secretary of Veterans Affairs,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**This matter** is before this Court on Defendant's Motion for Summary Judgment (DE 35), filed November 25, 2009. The court has considered the motion and all pertinent materials.

### Procedural History

Plaintiff, Chester A. Pearson filed a Complaint against his former employer, Defendant, Eric K. Shinseki, Secretary of the Department of Veterans Affairs, alleging discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §2000e. Defendant filed its answer on May 26, 2009.

In his complaint, Plaintiff alleges that he was discriminated against on the basis of his sex (1) with respect to his duty hours and (2) when he was constructively discharged. Plaintiff additionally alleges that his employer retaliated against him for filing a request for mediation.

On November 25, 2009, Defendant filed its Motion for Summary Judgment [DE 35]. On the same day, Plaintiff filed a one page "Motion for Denial of Summary Judgment" which was non-responsive other than to state that Plaintiff intended to prove his case at trial [DE 36]. By Order dated December 1, 2009, this Court struck Plaintiff's "Motion" and advised Plaintiff of the

1

provisions of Fed.R.Civ.P. 56, specifically the obligations of a party opposing a motion for summary judgment. The Court ordered Plaintiff to comply with Rule 56, as well as Local Rule 7.5, including the time requirements provided therein with respect to filing a response.

Plaintiff has failed to respond to the motion. As such, the facts listed in the Defendant's Statement of Undisputed Material Facts are deemed admitted to the extent they are supported by the record. See Local Rule 7.5 D.

## Facts

Plaintiff Chester Pearson was hired on September 17, 2006 at the Miami VA nursing home facility ("the VA") as a nursing assistant and worked there until April 27, 2007. Dep. p. 25, Mot. Ex. B.[1] During the time that he was employed by the VA, Plaintiff was a probationary employee, which is an employee who has been employed in the VA Health Care System for less than one year. Bulnes Decl. ¶2.

Plaintiff's immediate supervisor was nurse manager Cassandra M. McKenzie, who reported to Mary Nash, who in turn reported to Kathryn Ward. Dep. p. 26.

Plaintiff claims that when he was hired by Ms. McKenzie, he was promised the evening shift but that Ms. McKenzie refused to assign him that shift.[2] Dep. p. 33, 37. Plaintiff was on the day shift and the evening shift for two or three weeks each for training when he first started, and worked the evening shift for two or three weeks when one of the nursing assistants was fired. Dep. p. 39.

---

[1] All references to "Dep." are to the Deposition of Plaintiff Chester Pearson, dated Nov. 13, 2009 [DE 32].

[2] The hours of the evening shift were from 4:00 p.m. to midnight. Dep. p. 31. The evening shift was easier than the day shift because there were less patient responsibilities during that time. Dep. p. 33. Only three nursing assistants were assigned to the evening shift, whereas there were approximately eight during the day shift. Dep. pp. 35-36.

He also worked on the evening shift by volunteering to do overtime. Dep. pp. 31-32.[3] Plaintiff claims that when an evening position became available because someone quit, Ms. McKenzie put a female in that position instead of Plaintiff. Dep. p. 30.

The record contains a Report of Contact dated November 16, 2006, in which Ms. McKenzie states:

> Thursday November 16, 2006 @ 740 AM Celeste Hurst, Nursing Assistant came to the desk to collect her feeding list. After receiving her list she asked for Chester's list. I said to her to tell Chester to come and pick it up from me. Five minutes passed and Chester never came to the desk for his feeding list. I went down the North Hall to see if his patients were set up and/or being fed. They were not. The patients['] breakfast trays were on the bedside table unopened as the diet aide placed them. I walked to the East Side and found Chester in room 258 sitting on top of the resident cabinet with arms folded and swinging his legs up and down as he conversated [sic] with Ms. Hurst.
>
> Ms. Hurst was setting up the patient to feed. I asked Chester did Celeste ask him to come pick up his feeding list from me? He answered "no she didn't say you said for me to come and pick it up, she only said I had to go get it for myself." At that time I asked him "Why didn't you come pick it up?" He never answered. He passed by me headed toward the the [sic] north hallway. I walked along with Chester and said to him, "Chester this is the time for patients to be set-up to be fed not to be socializing in another room and none of your patients are set-up or eating. Chester continued to walk in a hurried manner. I heard him mumble a few words in a low tone voice, but I didn't understand him. I said "excuse me" but he continued to walk without responding to me.

Dep. Ex. 7.[4]

On January 24, 2007, at the beginning of Plaintiff's evening shift, Ms. McKenzie and Plaintiff did rounds of the rooms which Plaintiff had been assigned the evening before. Dep. p. 165. A Report of Contact of that date by Ms. McKenzie states that several patient tables were not set up

---

[3] Plaintiff testified that the evening shifts that he did work were at the request of the nurses on duty or were voluntary.

[4] Plaintiff testified that this incident did not occur as described by Ms. McKenzie. Dep. pp. 153-58.

3

to eat and several tables had urinals on top of the tables. Dep. Ex. 9.[5] According to the Report, two nurses stated that Plaintiff needed to go back to the day shift because he "needed more observation," that he "leaves the unit without informing them" and "he's very argumentative at times when asked to do certain task[s] (when having to put a particular patient back to bed)." Id. The file contains a Report of Contact from each nurse, dated January/2007, each of which state:

> Mrs. McKenzie:
> As per your request, and as we have already stated, during the period that Mr. Pearson was assigned to the evening shift for orientation, he needed more orientation to be able to function independently.

Pearson Ex. 2, 3.[6]

The next day, January 25, 2007, Plaintiff slipped and fell at work and was placed by his physicians on light duty. Dep. pp. 160-61. Plaintiff states that when he returned to the floor to drop off his light duty slip, two nurses told him that at the morning meeting, Ms. McKenzie stated that Plaintiff had made complaints about the day shift not doing their work. Dep. p. 162-63.

Due to his injury, Plaintiff did not work for ten days (Dep. p. 208), and when he returned he was on light duty for three weeks. Dep. 70. An employee on light duty cannot work the evening shift. Dep. 152. When Plaintiff returned to work, Ms. McKenzie did not put him on the evening shift. Dep. p. 132.

On or about February 23, 2007, Plaintiff presented a request for mediation to the VA's "ADR Office." Dep. p. 129, Ex. 4. Ms. McKenzie was aware of the request. Dep. p. 54. No mediation

---

[5] Plaintiff claims they did the rounds because he told Ms. McKenzie that the day shift workers were not doing their job (Dep. p. 165). However, a Report of Contact from Ms. McKenzie states that they performed the rounds because she wanted to see whether Plaintiff had set up his patients for dinner as he had told her. Dep. Ex. 9.

[6] There are also two Reports of Contact dated 3/30/07, one from each of these nurses, repeating these statements. Depo. Ex. 1.

4

occurred at that time. Depo. p. 93. Plaintiff testified that sometime thereafter, he asked Ms. McKenzie why he was not placed on the evening shift, and she stated that it was because of his light duty status, which Plaintiff maintains had already ended at that time. Depo. p. 131.

The record contains two Reports of Contact dated Monday, April 10, 2007. In the first, Ms. McKenzie wrote that a resident, Mr. T, reported to her that the day prior, Plaintiff was "very rude and nasty," and "refused to give me my over bed table with all my necessities." Dep. Ex. A. He additionally stated: "when he speaks to me he shouts at me…" Id. The Report further stated that Mr. T. advised that on the preceding day, Plaintiff brought him a glass of water which tasted "stale" and when he asked him to run water first and then catch it, Plaintiff "didn't pay any attention" to him and walked out of the room. Id. The Report states that Mr. T. said that he could hear Plaintiff outside of the door talking to someone and stating: "He said I'm trying to help him and he's telling me the water taste[s] stale. He can[']t do nothing [sic] for himself, but the water is stale." Id. The Report further states that Mr. T. reported that when he calls for help and Plaintiff answers the call bell, he always asks "if it[']s an emergency," and if it's not, Plaintiff refuses to send someone or find out what he needs. Id. Finally, the Report finally stated that Mr. T. requested that Plaintiff not take care of him. Id.

In the other Report of Contact, Ms. McKenzie states that another resident, Mr. R., told Ms. McKenzie that on that same weekend when Plaintiff came in to feed him, Plaintiff was on the phone with someone and "was very upset with someone about a cup of stale water," and said to the person on the phone "He is a bald face liar!" He can[']t help himself and ha[s] the nerve to tell me I gave him stale water. He better be glad I have changed because if I was the old Chester I used to be, I would have been all over him." Id. The Report further states that when Mr. R. reminded Plaintiff to feed him, Plaintiff asked him "why do[es] Ms. McKenzie have to assign someone to feed you and

not the other patients." Id.[7]

Ms. McKenzie advised Plaintiff of the Report regarding "stale water" and Plaintiff was taken off the floor. Dep. p. 103.

Plaintiff requested mediation through the Equal Employment Office. Dep. p. 99. At that mediation, Plaintiff was advised by Ms. McKenzie that they were trying to release him from the VA due to patient abuse and the mediation was discontinued. Dep. p. 99-100.

After reviewing Plaintiff's file, Frank Bulnes, Assistant Chief of Human Resources decided to terminate Plaintiff by a letter of termination dated April 13, 2007, made effective April 27, 2007. Bulnes Decl. ¶5; Dep. pp. 99, 220; Mot. Ex. B. The letter states that Plaintiff was given a "Career-Conditional Appointment as a Nursing Assistant" and further states:

> 1. The Associate Director, Nursing Care, has recommended that you be terminated during your probationary period for the good of the service. Specifically, you have engaged in actions constituting patient abuse, and you have displayed disrespectful conduct to your supervisor.

Mot. Ex. B. Plaintiff resigned prior to his termination. Dep. p. 220.

## Discussion

### I. Standard on Motion for Summary Judgment

The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee's note). Summary judgment is proper only when no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law. Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002).

---

[7] Although Plaintiff testified that he did have contact with these two patients, he denies that the incidents occurred as described by Ms. McKenzie.

The moving party bears the initial burden of explaining to the Court the basis for the motion and identifying those portions of the record that demonstrate that there is no genuine issue of material fact. United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991). Thus the movant must either show that the nonmoving party has no evidence to support its case, or present "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438; Young v. City of Augusta, 59 F.3d 1160, 1170 (11th Cir. 1995). Affidavits based "upon information and belief" and the like will not suffice. Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). However, the Court must view all of the evidence in the light most favorable to the nonmoving party, with all reasonable inferences also being drawn in the nonmovant's favor. Info. Sys.& Networks, 281 F.3d at 1224; Four Parcels of Real Prop., 941 F.2d at 1437. If the movant is able to demonstrate either of the aforementioned requirements, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006).

An issue of fact is material if it "might affect the outcome of the suit under the governing law." Id. at 248. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989). However, if the facts and inferences overwhelmingly favor one side, such that a reasonable jury could only arrive at one verdict, then summary judgment must be granted as a matter of law. Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1167 (11th Cir. 1997). For the nonmovant to survive a motion for summary judgment, there must be more than a mere scintilla of evidence in its favor. Id.

The Eleventh Circuit has held that "[t]he summary judgment rule applies in job discrimination just as in other cases." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir.

2004) (quoting Chapman v. AI Transport, 229 F.2d 1012, 1026 (11th Cir. 2000) (en banc)).

## II. Merits of Discrimination Claims

Plaintiff claims that Defendant discriminated against him on the basis of sex by not giving him the evening shift and by terminating him. Plaintiff also claims that Defendant retaliated against him for filing the request for mediation in February, 2007.

### A. Disparate Treatment

The Eleventh Circuit follows a burden shifting analysis in Title VII disparate treatment discrimination cases based on circumstantial evidence.[8] See McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973)). If plaintiff has made a prima facie showing, discrimination is presumed. See Walker v. Mortham, 158 F.3d 1177, 1183 (11th Cir. 1998). The burden then shifts to the employer "to articulate some legitimate, non-discriminatory reason for the employee's rejection." McDonnell-Douglas Corp., 411 U.S. at 802. The employer's burden at the rebuttal stage, which is one of production, rather than proof, is "exceedingly light." Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1142 (11th Cir. 1983). If the employer fails to meet this burden, the plaintiff is entitled to judgment as a matter of law, assuming the trier of fact believes the evidence offered in support of the prima facie case. Walker, 158 F.3d at 1183.

If the employer is successful in producing a legitimate, nondiscriminatory reason for its decision, the presumption of discrimination created by the McDonnell Douglas framework "drops from the case," and the plaintiff "must then persuade the trier of fact that the defendant intentionally discriminated against her despite the defendant's assertion of a lawful reason for the challenged employment decision." Id. (citing Texas Department of Community Affairs v. Burdine, 450 U.S.

---

[8] Plaintiff has presented no direct evidence of discrimination in support of his claims.

248 (1981)). Pretext may be demonstrated "either directly by persuading the Court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Sweat v. Miller Brewing Co., 708 F.2d 655, 656 (11th Cir. 1983)(quoting Burdine, 450 U.S. at 256).

In order to prove a prima facie case of disparate treatment, Plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; and (3) his employer treated similarly situated employees outside his classification more favorably. See E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000) (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Plaintiff fails to state a prima facie case as to the claim that Defendant failed to give Plaintiff the shift he requested, in that Plaintiff has failed to identify a similarly situated female employee who was given more favorable treatment. The employee identified as a comparator "must be similarly situated 'in all relevant respects'." Wilson, 376 F.3d at 1091 (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). In fact, the comparator must be "nearly identical to the plaintiff." Id.

Although Plaintiff generally testified that females worked the evening shift, and referenced one female in particular who was given the position rather than himself when someone else quit, he gives no specifics which support a finding that any of these female employees are valid comparators. This is particularly relevant, where, as here, Plaintiff was a new, probationary employee. Moreover, Plaintiff himself testified that a female nursing assistant, Celeste Hurst, was not assigned the shift she wanted, because she was on the evening shift and wanted the day shift. Dep. p. 143-44.

As to Plaintiff's termination claim, the Eleventh Circuit has noted:

> When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, [the court] evaluate[s] "whether the employees are involved in or accused of the same or similar conduct and are disciplined in

different ways." [citing Maniccia, 171 F.3d at 1368] (citations and quotation marks omitted). When making that determination, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." [footnote omitted] [citations omitted].

Burke-Fowler v. Orange County, Florida, 447 F.3d 1319, 1323 (11th Cir. 2006). Plaintiff must show that the similarly situated employee reported to the same supervisor as the Plaintiff, was subjected to the same standard governing performance evaluations and discipline and engaged in conduct similar to the Plaintiff's. Gaston v. Home Depot USA, Inc., 129 F. Supp. 2d 1355, 1368 (S.D. Fla. 2001), aff'd, 265 F.3d 1066 (11th Cir. 2001).

In his deposition, Plaintiff referred to several other nursing assistants who were not terminated even though they were accused of committing patient abuse: there was an "older woman" and a "young woman" whose names Plaintiff could not recall (Dep. p. 175), and someone with the last name Brown who left a rectal tube in a patient for over 24 hours. (Dep. p. 201). As to the first two employees, Plaintiff failed to describe the instance of alleged abuse, and as to the third, the offense was different than that of which Plaintiff was accused. Plaintiff also referred to nurse assistant Beverly Brown, whom Plaintiff testified had allegedly broken a patient's hand (Dep. p. 176). Even assuming that this offense was sufficiently similar to Plaintiff's alleged offense, there was no evidence that the employer was made aware that Ms. Brown was involved in the incident. (Dep. p. 182).

Moreover, even if the above referenced incidents of abuse were sufficiently similar to that allegedly committed by Plaintiff, Plaintiff has not presented any evidence that these nursing assistants reported to Ms. McKenzie, or that they were probationary employees. Additionally, Plaintiff was also reported to have been disrespectful to his supervisor. There is no evidence that any of the above referenced female employees had been accused of the same behavior. Moreover, Plaintiff testified that he believes that his supervisors have a "track record" of trying to bring

"trumped up charges" to "get rid of people," including female employees (Dep. p. 66). Finally, Defendant has presented evidence that female employees supervised by Ms. McKenzie, including probationary employees, have been terminated by Ms. McKenzie. See Bulnes Decl. ¶ 7.[9]

Because Plaintiff has failed to establish a prima facie case of disparate treatment, Defendant is entitled to summary judgment as to that claim.

### B. Retaliation

Plaintiff testified that he believes that Ms. McKenzie's refusal to assign him the evening shift and his termination were acts of retaliation after he requested mediation in February, 2007.

The anti-retaliation provision of Title VII, 42 U.S.C. §2000e-3(a) prohibits discrimination against an employee for engaging in activity deemed protected under the statute. Corbitt v. Home Depot U.S.A., Inc., ___ F.3d ___, No. 08-12199, 2009 WL 4432654, at *14 (11th Cir. Dec. 4, 2009).[10] In order to state a prima facie case, Plaintiff must show that (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal

---

[9]To the extent that Plaintiff testified that Ms. McKenzie discriminated against him by preventing him from talking to two new employees (Dep. pp. 58-60), not only has Plaintiff failed to identify a comparator, but the Court finds that Plaintiff has failed to show this constitutes an "adverse employment action." See Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001) (holding that "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." (emphasis in original)) With respect to Plaintiff's testimony that Ms. McKenzie acted in a "discriminatory" fashion by trying "to turn [the female nursing assistants] against him," (Dep. pp. 40-41), when asked why he believed that this was based on his gender, as opposed to just being possibly not the best use of judgment, Plaintiff stated that it was because he did not give Ms. McKenzie his "undivided attention" (Dep. p. 46) and that he "ignored" things that he "considered sexual harassment." Dep. p. 47. Plaintiff concedes that he did not file a claim of sexual harassment (Dep. p. 47), and there is no claim of hostile environment discrimination in Plaintiff's complaint. Accordingly, the Court finds that this testimony does not create any issue of fact which precludes summary judgment.

[10]Title VII forbids an employer from "discriminat[ing] against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]. 42 U.S.C. §2000e-3(a).

connection between the protected activity and the adverse employment action. Id. If Plaintiff succeeds, the McDonnell Douglas burden shifting analysis applies. Id. In order to establish the causal link element, Plaintiff must at a minimum show that "the employer was actually aware of the protected expression at the time it took adverse employment action." Id. (quoting Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) (internal quotation marks and citations omitted)).

Defendant initially notes that Plaintiff did not contact an EEO counselor and allege discrimination until after he was terminated in April, 2007, which precludes any of the activities taken by Defendant from being causally related to that activity. The Court finds that even if Plaintiff's request for internal mediation is considered protected activity, Plaintiff has failed to rebut the legitimate non-discriminatory reason for the denial of his request for evening shift, that is, that Plaintiff had been placed on light duty status. Plaintiff testified that at the time in question, he had already come off of light duty status. Depo. p. 89. Even if this is the case and Ms. McKenzie was mistaken about, or deliberately discounted Plaintiff's actual status, the Court finds that there is insufficient evidence of record, other than Defendant's own "belief," to show that retaliation more likely motivated Ms. McKenzie's decision to not assign Plaintiff to the evening shift at that time, in that Plaintiff testified that Ms. McKenzie "never" assigned him the evening shift, even prior to the request for mediation. (Dep. p. 37).[11]

With respect to Plaintiff's termination, Defendant has also proffered a legitimate non-retaliatory reason - reports from two patients concerning abusive actions taken by Plaintiff, as well as disrespectful behavior by Plaintiff towards his superior, Ms. McKenzie. Although in his deposition testimony, Plaintiff denied that the incidents occurred in the manner stated, Plaintiff has

---

[11]To the extent that Plaintiff testified in his deposition that he believes that Ms. McKenzie "created" the Reports of Contact from the evening shift nurses which state that Plaintiff needed more observation, Defendant does not state that it relied on those Reports in making its decision to deny him the evening shift or to terminate him.

failed to respond to Defendant's Statement of Undisputed Material Facts, and has thus admitted the fact that two patients complained about him. Statement of Undisputed Facts ¶8. This fact, as well as the incident of disrespectful conduct, are supported in the record by the Reports of Contact prepared by Ms. McKenzie, as well as the Declaration of Frank Bulnes. Bulnes Decl. ¶¶ 3-4. Furthermore, as Mr. Bulnes explains in his Declaration, because Plaintiff was a probationary employee, there was no need for a formal investigation of his conduct and the decision to terminate Plaintiff was based on the documentary evidence, and not in retaliation for any protected activity exercised by Plaintiff. Id. at ¶¶ 5-6. Plaintiff has failed to sufficiently rebut this evidence of non-retaliation.

Because Plaintiff has failed to sufficiently rebut Defendant's proffered non-retaliatory reason for its actions, Defendant is entitled to summary judgment as to the retaliation claim.

### Recommendation

For the foregoing reasons, the Court respectfully recommends that the Defendant's Motion for Summary Judgment be **GRANTED**.

The parties have fourteen (14) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6 day of January, 2010.

STEPHEN T. BROWN
CHIEF U.S. MAGISTRATE JUDGE

cc: Hon. Jose E. Martinez
Counsel of record
Chester A. Pearson, pro se